## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

**FRED A. HYSMITH,**
      **Plaintiff,**

**v.**                             **Case No: 5:08cv267/SPM/MD**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**
      **Defendant.**

_____

### REPORT AND RECOMMENDATION

This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Rules 72.1(A), 72.2(D) and 72.3 of the local rules of this court relating to review of administrative determinations under the Social Security Act and related statutes.  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying claimant Hysmith's application for disability insurance benefits and Supplemental Security Income benefits under Titles II and XVI of the Act.

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

### PROCEDURAL HISTORY

Mr. Hysmith filed applications for benefits claiming an onset of disability as of April 19, 2004.  The applications were denied initially and on reconsideration, and

Mr. Hysmith requested a hearing before an administrative law judge (ALJ). A hearing was held on May 11, 2006 at which Mr. Hysmith was represented by counsel and testified. A vocational expert also testified. The ALJ entered an unfavorable decision (tr. 25-34) and Mr. Hysmith requested review by the Appeals Council, which accepted the case for review. Additional evidence was submitted, and the Appeals Council entered a new decision (while adopting certain portions of the ALJ's decision) affirming the ALJ's ultimate decision that Mr. Hysmith was not disabled, but on different grounds (tr.12-15). The Commissioner has therefore made a final decision, and the matter is subject to review in this court. *Ingram v. Comm'r of Soc. Sec. Admin*, 496 F.3d 1253, 1262 (11th Cir. 2007); *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998).

This timely appeal followed.


## ADMINISTRATIVE FINDINGS

Relative to the issues raised in this appeal, the ALJ found that Mr. Hysmith had not engaged in substantial gainful activity since his claimed onset date and that he had severe impairments of (1) mild degenerative disc disease and (2) borderline intellectual functioning, but that he did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404 Subpart P, Appendix 1; that he had the residual functional capacity to perform medium work except for lifting and carrying 20 pounds occasionally and 10 pounds frequently, could sit, stand and walk for six hours each during a routine eight hour workday, had no postural or environmental limitations and could manage short, simple instructions; that he was unable to perform any of his past relevant work as a plumber helper, driver helper, sandblaster and aircraft parts assembler; that he was 41 years old, a younger individual with at least a high school education; that his past work was unskilled; that considering his age, education, work experience and residual functional capacity there were jobs that exist in significant

numbers in the national economy that he could perform, including assembler, cafeteria attendant, housekeeper, security systems monitor and photograph mounter; and that he was not under a disability as defined in the Act.

Upon review, the Appeals Council adopted the facts found by the ALJ "as herein modified" and further adopted the ALJ's findings and conclusions regarding whether Mr. Hysmith was disabled, but did not adopt the ALJ's basis upon which the finding was made. The Appeals Council rejected the ALJ's finding that Mr. Hysmith was not disabled within the framework of Rule 203.28, Table No. 3, Appendix 2, Subpart P which related to a person with the residual functional capacity to perform medium work. The Appeals Council noted that in the body of the decision, the ALJ found that Mr. Hysmith could lift or carry only 20 pounds occasionally and 10 pounds frequently, which was consistent with the performance of light work, not medium work. Nevertheless, the Appeals Council discounted the opinions of the treating physicians, as had the ALJ, and determined that Mr. Hysmith could perform a reduced range of light work, and that within the framework of Rule 202.20 and 202.21, Mr. Hysmith was not disabled.

## STANDARD OF REVIEW

In Social Security appeals, this court must review de novo the legal principles upon which the Commissioner's decision is based. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986)). There is no presumption that the Commissioner followed the appropriate legal standards in deciding a claim for benefits, or that the legal conclusions reached were valid. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996); *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002). Failure to either apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

The court must also determine whether the ALJ's decision is supported by substantial evidence. *Moore*, 405 F.3d at 1211 (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)). Even if the proof preponderates against the Commissioner's decision, if supported by substantial evidence, it must be affirmed. *Ingram*, 496 F.3d at 1260; *Miles*, 84 F.3d at 1400. Substantial evidence is more than a scintilla but less than a preponderance, and encompasses such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Moore*, 405 F.3d at 1211 (citation omitted). In determining whether substantial evidence exists, the court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Secretary's decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). This limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence. *Moore*, 405 F.3d at 1211 (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). Findings of fact of the Commissioner that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); *Ingram*, 496 F.3d at 1260.

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The social security regulations establish a five-step evaluation process to analyze claims for both SSI and disability insurance benefits. *See Moore,* 405 F.3d at 1211; 20 C.F.R. § 416.912 (2005) (five-step determination for SSI); 20 C.F.R. §

404.1520 (2005) (five-step determination for DIB). A finding of disability or no disability at any step renders further evaluation unnecessary. The steps are:

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairment?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent any other work?

These regulations place a very heavy burden on the claimant to demonstrate both a qualifying impairment or disability and an inability to perform past relevant work. *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir.1985)). If the claimant establishes such an impairment, the burden shifts to the Commissioner at step 5 to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *Allen v. Bowen,* 816 F.2d 600, 601 (11th Cir. 1987). If the Commissioner carries this burden, claimant must prove that he cannot perform the work suggested by the Commissioner. *Doughty,* 245 F.3d at 1278 n.2; *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).


## PLAINTIFF'S MEDICAL HISTORY

On April 25, 2004 Mr. Hysmith was in a motor vehicle accident in which he injured his neck. For the next three months he was treated by Dr. J.S. Owens, a chiropractor, who recommended that he return to work on July 19, 2004. In the meantime, Mr. Hysmith had seen an orthopedist, Henry Barnard, M.D., on June 18, 2004. Mr. Hysmith gave Dr. Barnard a history of his automobile accident with continuing pain. On physical examination there was hypersensitive touch at the

base of the neck but no focal motor strength deficits, reflex asymmetry or sensory changes. Range of motion was decreased. Dr. Barnard felt that this was "most likely a whiplash type of injury" and started Mr. Hysmith on anti-inflammatory medications. Mr. Hysmith did not see Dr. Barnard again.

Mr. Hysmith went to the emergency room on July 1, 2004 complaining of neck and shoulder pain. He was discharged with medication. On July 30, 2004 he was seen by a neurosurgeon, Douglas Stringer, M.D., complaining of mid thoracic pain. Dr. Stringer performed nerve blocks which lessened the pain (tr. 160). Mr. Hysmith returned to Dr. Stringer on August 31 for four trigger point injections (tr. 157). On September 22, 2004 Dr. Stringer noted that Mr. Hysmith had some pain with a straight leg reflex test but that his mid back pain had resolved. He was released to his normal activities with no lifting over 50 pounds, and Dr. Stringer indicated that he did not feel he had anything further to offer at that time (tr. 155).

Approximately six months later, without any record of intervening treatment, Mr. Hysmith was seen by a pain management physician, Ata Mohsin, M.D. Dr. Mohsin took a history of the automobile accident which resulted in injury to the neck and low back with pain progressing gradually. Mr. Hysmith scored his pain as a 10 out of 10, constant, increasing with activity such as sitting, standing, walking, bending forward, lying down, changing position and lifting objects. Despite the severity of the pain reported by Mr. Hysmith, on physical examination he had a normal gait, could sit, stand and walk without assistance, and could heel and toe walk. He had full range of motion in the neck, decreased range of motion on flexion extension and lateral rotation in the low back, full range of motion in all other major joints and no tender points. His muscle strength and deep tendon reflexes were normal but straight leg raising was positive in both legs. Dr. Mohsin's assessment was chronic neck and low back pain with possible cervical and lumbar radiculopathy, and he ordered an MRI (tr. 193-196).

A January 21, 2005 MRI of the lumbar spine on showed a mild right paracentral focal disc bulge at L5-S1 and no other significant abnormality (tr. 197). An MRI of the cervical spine performed the same day showed mild spinal stenosis at the C6-7 level with moderate central disc protrusion/osteophyte complex and mild degenerative changes at C4-5 and C5-6 (tr. 199). Over the next four months Dr. Mohsin performed a series of lumbar epidural steroid injections which, as of April 1, 2005, had helped, although Mr. Hysmith still complained of pain (tr. 182-190). Mr. Hysmith also complained of pain in his groin and was referred to Aziz Ahmad, M.D., for a suspected hernia. Dr. Ahmad found no hernia but felt that the groin pain was most probably related to radiculopathy from the back (tr. 211). On June 22, 2005, Dr. Mohsin noted that Mr. Hysmith continued to complain of groin pain but that the low back pain was responding to current management and the epidural steroid injections helped (tr. 180).

On August 26, 2005 Mr. Hysmith reported to Dr. Mohsin that he had pain in his right hip, worse when walking and on September 30, 2005 he was given an injection in the trochanteric bursa (tr. 175-178). In late 2005 and early 2006 Mr. Hysmith saw Dr. Mohsin three times. Dr. Mohsin noted that Mr. Hysmith was responding to treatment although he had some trigger points on his right lumbar spine (tr. 169-172). On his last visit, Dr. Mohsin noted that the current medication was helping to some extent, that Mr. Hysmith was responding to current treatment, and that he needed to see his primary care physician for management of hypertension (tr. 167-168). Mr. Hysmith has not seen Dr. Mohsin since.

Mr. Hysmith's primary care physician was Ahmad Ismail, M.D. His first recorded visit to Dr. Ismail was on April 6, 2005, a year after the motor vehicle accident, when he presented complaining of abdominal pain. This was shortly before he was examined by Dr. Ahmad who found no hernia (tr. 212). By April 22, 2005, Dr. Ismail noted that Mr. Hysmith was doing "much better." On May 9, 2005 Mr. Hysmith complained of lower back pain. His blood pressure was noted to be

156/100. He was continued on his pain medication and on May 15, 2005 his blood pressure had improved and was stable (tr. 207-208). Dr. Ismail treated Mr. Hysmith for a sore throat on June 6, 2005 (tr. 206), and provided continued treatment for his high blood pressure in August 2005, which was noted to be doing well (tr. 203-205).

On October 6, 2005 Dr. Ismail reported that Mr. Hysmith was complaining of being jittery with mood swings. His physical examination was normal and Dr. Ismail's impression was hypertension, anxiety and depression for which he prescribed Nexium and Lexapro (tr. 202).

Mr. Hysmith next saw Dr. Ismail six months later and three weeks before the ALJ hearing, on April 18, 2006, saying that he had fallen two weeks prior and "hurt all over." (Tr. 201). There was no mention of any mental problems on that date and Dr. Ismail filled out a parking permit application indicating that Mr. Hysmith was unable to walk without the use of or assistance from a brace, cane, crutch, or other assistive device (tr. 166). Ten days later, on April 28, 2006, Dr. Ismail filled out a prescription form for a quad walking cane (tr. 217). On May 11, 2006, the day of the hearing before the ALJ, Dr. Ismail filled out a prescription stating that Mr. Hysmith was "disabled to do any gainful employment." (Tr. 215). Later, on the same prescription, he added "he can't lift five pounds." (Tr. 214). There is no indication that Mr. Hysmith has seen Dr. Ismail since April 18, 2006.

After the hearing before the ALJ, a disability evaluation was performed by E. Jacob, M.D., a neurologist, on January 23, 2007. On physical examination Dr. Jacob found no muscle tenderness, the lumbar spine curvature was normal with no tenderness over the spinus processes and no paravertebral muscle spasms. Straight leg raising was positive at 90° sitting. There was no tenderness in the sciatic notch. Dr. Jacob noted dirt or grease in Mr. Hysmith's palms, fingers, nails and cuticles and well developed calluses in his palms. Examination of the nervous system was normal, and motor examination, including tone, power and coordination in the arms and legs were normal. Mr. Hysmith was noted to walk with a limp but

could put weight on both sides and used a quad cane which he could walk without, although he limped. Deep tendon reflexes were equal and normal and Mr. Hysmith was able to get on the examination table without help and was able to undress himself sitting on the edge of a chair. Sensory examination was normal. Dr. Jacob's impression was post-traumatic low back pain with symptoms affecting the left side, pain and limitation of shoulder movement on the right side, history of hypertension, history of angina, history of tobacco, alcohol and drug abuse (tr. 220-223). Dr. Jacob filled out a medical source statement of ability to do work-related activities in which he opined that Mr. Hysmith could lift 20 pounds occasionally, less than 10 pounds frequently, could stand or walk at least two hours in an eight hour workday, that he must alternately sit and stand to remove pain or discomfort "according to patient" and that he could not push or pull with his lower extremities (tr. 224-227).

A month later, Dr. Ismail filled out a medical source statement in which he opined that Mr. Hysmith could lift and carry less than 10 pounds either occasionally or frequently, could stand and walk for less than two hours in an eight hour workday, and was limited in use of his arms and legs (tr. 229-233).

On August 3, 2007 the ALJ rendered an unfavorable decision. Three weeks later Mr. Hysmith's attorney referred him to Brent Decker, Ph.D., a psychologist, for a psychological evaluation. Testing showed I.Q. scores between 81 and 85, and Mr. Hysmith reported symptoms of depression. Dr. Decker diagnosed major depressive disorder, recurrent, moderate to severe symptoms, pain disorder with both psychological and physiological features, and a cognitive disorder, not otherwise specified. He recommended psychiatric treatment. Dr. Decker also filled out a medical source statement in which he indicated that Mr. Hysmith had marked limitation in almost all areas of ability to understand, remember, and carry out instructions, with an extreme limitation in the ability to respond to work pressures in a usual work setting, and a moderate limitation in the ability to sustain an ordinary routine without special supervision. He also noted marked limitation in the ability

to manage household/personal expenses and respond appropriately to normal pressures of daily living with moderate limitations in all other areas of activities of daily living. Dr. Decker opined that Mr. Hysmith would be absent from work three times a month and could not manage benefits in his best interest, and that these limitations had existed from April 19, 2004 (tr. 242-252).

Dr. Decker's report was presented to the Appeals Council after entry of the ALJ's unfavorable decision.


## DISCUSSION

Mr. Hysmith argues that the ALJ and the Appeals Council erred in failing to consider his need for a cane, in failing to find that his mental impairment was severe, in rejecting the opinions of treating and examining physicians, and in improperly finding him less than credible. Mr. Hysmith contends that he was disabled from his onset date. The Commissioner argues that the ALJ's findings (to the extent they were accepted by the Appeals Council) and the Appeal Council's findings were supported by substantial evidence and must, therefore, be sustained. The issue thus presented is whether the Commissioner's decision that Mr. Hysmith was not disabled, in light of his physical and mental condition, age, education, work experience, and residual functional capacity, is supported by substantial evidence in the record.

1.    Cane.

Mr. Hysmith first contends that the ALJ and Appeals Council erred in failing to consider his use of a cane. As noted above, Dr. Ismail did not prescribe a cane until a full two years after Mr. Hysmith's claimed onset date, and only two weeks before the ALJ hearing. The prescription was also written ten days after Mr. Hysmith fell and "hurt all over" and six months after Dr. Ismail had last seen him. The ALJ noted that Dr. Ismail's finding that Mr. Hysmith needed a cane was rendered with no explanation and no supporting findings. Mr. Hysmith has not shown that the cane

was anything more than a temporary assist after his fall, and even though he was still using it when he was examined by Dr. Jacob, that physician noted that he could walk without it, albeit with a limp, and moved around easily.  The burden of proving disability is on the plaintiff, and here there was no evidence that the cane was either related to Mr. Hysmith's motor vehicle accident or was required long-term.  Mr. Hysmith is not entitled to reversal on this ground.

       2.   <u>Mental Impairment.</u>

       Mr. Hysmith next contends that there was error in not finding his mental impairments to be severe.  At step two the ALJ must determine whether the claimant has a severe impairment.  20 C.F.R. § 1520(c).  The burden at this step is on the claimant.  *Chester v. Bowen, supra.*  The Commissioner's regulations provide:

> What we mean by an impairment(s) that is not severe.
>
> (a) Non-severe impairment(s).  An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.
> (b) Basic work activities.  When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs.  Examples of these include--
> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations;  and
> (6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521.  The Commissioner has adopted an interpretive ruling that specifically addresses how to determine whether medical impairments are severe.  The ruling provides in part:

> As explained in 20 C.F.R. §§ 404.1520, 404.1521, 416.920(c), and 416.921, at the second step of sequential evaluation it must be determined whether medical evidence establishes an impairment or

combination of impairments "of such severity" as to be the basis of a finding of inability to engage in any SGA [substantial gainful activity]. An impairment or combination of impairments is found "not severe" and a finding of "not disabled" is made at this step when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered (i.e., the person's impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities). Thus, even if an individual were of advanced age, had minimal education, and a limited work experience, an impairment found to be not severe would not prevent him or her from engaging in SGA.

SSR 85-28, 1985 WL 56856.

In *Brady v. Heckler*, 724 F.2d. 914 (11th Cir. 1984) the Eleventh Circuit used the test later adopted in SSR 85-28 to state that a claimant's abnormalities must be of such kind that they would not be expected to interfere with the individual's ability to work. The Eleventh Circuit has further explained that

[s]tep two is a threshold inquiry. It allows only claims based on the most trivial impairments to be rejected. The claimant's burden at step two is mild. An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience. Claimant need show only that her impairment is not so slight and its effect is not so minimal.

*McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). It is not for the reviewing court to say that under these circumstances plaintiff's impairment is or is not trivial, only that the ALJ must properly justify his finding on that issue. And the ALJ's findings must be supported by substantial evidence.

Here the Appeals Council considered Mr. Hysmith's mental condition, including the report by Dr. Decker, and found that there was no basis for restricting Mr. Hysmith's residual functional capacity. The Appeals Council appropriately noted that during the entire two years between Mr. Hysmith's claimed onset date and the

ALJ hearing, there was scant mention of any mental defects. Dr. Ismail noted depression once, but felt that it was related to hypertension. Dr. Decker saw Mr. Hysmith, on his attorney's referral, very shortly after the ALJ's unfavorable decision. Dr. Decker's opinion and diagnosis were totally at odds with anything in the medical record for the previous two years, yet Dr. Decker opined that Mr. Hysmith's marked and severe mental impairments had existed during that entire time. The Appeals Council was justified in disregarding Dr. Decker's opinion, and Mr. Hysmith is not entitled to reversal on this ground.

　　　3.　　Treating Physicians.

　　　Mr. Hysmith next contends that there was error in discounting Dr. Ismail's opinion. The Appeals Council did not disturb the ALJ'S ruling on that issue. Absent good cause, the opinion of a claimant's treating physician must be accorded considerable or substantial weight by the Commissioner. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-1241 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Broughton v. Heckler*, 776 F.2d 960, 960-961 (11th Cir. 1985); *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986). "Good cause" exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Phillips,* 357 F.3d at 1241; see also *Lewis*, 125 F.3d at 1440 (citing cases).

　　　If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnor v. Bowen,* 816 F.2d 578, 582 (11th Cir.

1987).  When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical impairments at issue; and (6) other factors which tend to support or contradict the opinion.  20 C.F.R. 404.1527(d).

The opinion of a non-examining physician is entitled to little weight, and, if contrary to the opinion of a treating physician, is not good cause for disregarding the opinion of the treating physician, whose opinion generally carries greater weight. *See* 20 CFR § 404.1527(d)(1);  *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985); *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *Hurley v. Barnhart*, 385 F.Supp.2d 1245, 1255 (M.D.Fla. 2005).   However, a brief and conclusory statement that is not supported by medical findings, even if made by a treating physician, is not persuasive evidence of disability.  *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987); *Warncke v. Harris*, 619 F.2d 412, 417 (5th Cir. 1980).

"When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Phillips*, 352 F.3d at 1241.    Failure to do so is reversible error. *Lewis*, 125 F.3d at 1440 (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986));[1] *see also Nyberg v. Commissioner of Social Security*, 179 Fed.Appx. 589, 591 (11th Cir. 2006) (Table, text in WESTLAW)(also citing *MacGregor*).

Here the ALJ noted that Dr. Ismail's treating records were "basically benign" (tr. 29), and that his treatment was consistently conservative.  He did not refer Mr. Hysmith to a specialist, and his sketchy records primarily concerned Mr. Hysmith's hypertension.  Moreover, Dr. Ismail's prescription pad note that Mr. Hysmith was

---

[1]*MacGregor* further held that "Where the [Commissioner] has ignored or failed properly to refute a treating physician's testimony, we hold as a matter of law that he has accepted it as true." 786 F.2d at 1053.

disabled, and his subsequent note that he could not lift five pounds was, as the ALJ noted, entirely unsupported by the medical record.

A treating physician's opinion that a patient is "unable to work" or is "disabled" is not dispositive for purposes of Social Security claims. The Commissioner's regulations and the interpretations of those regulations clearly provide that an ALJ should give weight to a physician's opinions concerning the nature and severity of a claimant's impairments, but that the ultimate question of whether there is disability or inability to work is reserved to the Commissioner. For instance, Title 20 C.F.R. § 404.1527(e)(1) specifically states that a finding of disability or inability to work by a medical source does not mean that the Commissioner will automatically reach the same conclusion. *See also* Title 20 C.F.R. § 416.927(e). Furthermore, the Commissioner "will not give any special significance to the source" of an opinion on issues reserved for the Commissioner. Title 20 C.F.R. § 404.1527(e)(3) and § 416.927(e)(3); *see also* Social Security Ruling 96-5p (whether an individual is disabled is a question reserved to the Commissioner; treating source opinions on such questions are "never entitled to controlling weight or special significance"). Although such opinions on disability are not entitled to controlling weight, they must not be ignored, and the Commissioner must examine the entire record to determine whether such opinions are supported by the record. SSR 96-5p. In *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997) the court reversed the ALJ's finding of no disability, in part because the ALJ relied on a treating physician's report that the claimant could no longer work as a longshoreman when this report was ambiguous as to whether the claimant could do *any* work, and the physician subsequently wrote a letter saying the claimant was completely disabled.

To require the Commissioner to accept as controlling a statement that a patient is or is not disabled would require the Commissioner to credit the physician not only with knowledge of the patient's physical condition, but also with an

understanding of the nuances of how the regulations analyze physical limitations with respect to job experience, age, education, transferability of skills, the definitions of the various levels of exertion relevant to types of work, and similar matters. Moreover, a physician's opinion on whether a person is able to work may be colored by such things as the physician's knowledge of local hiring practices, whether there are specific job vacancies, a person's reluctance to do a particular kind of work, and similar matters. These things are not properly considered by the Commissioner in determining disability. Title 20 C.F.R. §§ 404.1566, 416.966. For all these reasons, a physician's opinion that his or her patient cannot work or is disabled is not a conclusive medical opinion for the purpose of Social Security benefits determinations and by itself is not entitled to special significance.

Here the ALJ's determination that Dr. Ismail's opinions were entitled to little weight was supported by substantial record evidence, and Mr. Hysmith is not entitled to reversal on this ground.

### 4. Credibility.

As his last ground for relief Mr. Hysmith contends that the ALJ erred in finding him less than credible with respect to his subjective complaints of pain. As this court is well aware, pain is treated by the Regulations as a symptom of disability. Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, ". . . unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms." *Accord* 20 C.F.R. § 416.929. The Eleventh Circuit has articulated the three-part pain standard, sometimes referred to as the *Hand*[2] test, as follows:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test

---

[2]*Hand v. Bowen*, 793 F.2d 275, 276 (11th Cir.1986) (the case originally adopting the three-part pain standard).

> **showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.**

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Ogranaja v. Commissioner of Social Security*, 186 Fed.Appx. 848, 2006 WL 1526062, *3+ (11th Cir. 2006) (quoting *Wilson*) (Table, text in WESTLAW); *Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1216 (11th Cir. 1991).

The Eleventh Circuit has also approved an ALJ's reference to and application of the standard set out in 20 C.F.R. § 404.1529, because that regulation "contains the same language regarding the subjective pain testimony that this court interpreted when initially establishing its three-part standard." *Wilson, supra*, 284 F.3d at 1226. Thus, failure to cite to an Eleventh Circuit standard is not reversible error so long as the ALJ applies the appropriate regulation.

But "[w]hile both the Regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." *Elam*, 921 F.2d at 1215. The Eleventh Circuit has held that "pain alone can be disabling, even when its existence is unsupported by objective evidence." *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)(citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)); *Walker v. Bowen*, 826 F.2d 996, 1003 (11th Cir. 1987); *Hurley v. Barnhart*, 385 F.Supp.2d 1245, 1259 (M.D.Fla. 2005). However, the presence or absence of evidence to support symptoms of the severity claimed is a factor that can be considered. *Marbury*, 957 at 839-840; *Tieniber v. Heckler,* 720 F.2d 1251, 1253 (11th Cir. 1983).

Finally, if the Commissioner refuses to credit subjective testimony of the plaintiff concerning pain he must do so explicitly and give reasons for that decision. *MacGregor v. Bowen*, 786 F.2d at 1054. Where he fails to do so, the Eleventh Circuit has stated that it would hold as a matter of law that the testimony is accepted as

true.  *Holt v. Sullivan*, 921 F.2d at 1223; *MacGregor v. Bowen*, 786 F.2d at 1054.
Although the Eleventh Circuit does not require an  explicit finding as to a claimant's
credibility, the implication must be obvious to the reviewing court.  *Dyer v. Barnhart*,
395 F.3d 1206, 1210 (11th Cir. 2005).  The credibility determination does not need to
cite particular phrases or formulations but it cannot merely be a broad rejection
which is not enough to enable the reviewing court to conclude that the ALJ
considered the claimant's medical condition as a whole.  *Dyer*, 395 F.3d at 1210 (11th
Cir. 2005) (internal quotations and citations omitted).  And of course, the reasons
articulated for disregarding the plaintiff's subjective pain testimony must be based
upon substantial evidence.  *Wilson*, 284 F.3d at 1225-1226; *Jones v. Department of
Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991); *Hurley*, 385
F.Supp.2d at 1259.

       Underlying the *Hand* standard is the need for a credibility determination
concerning a plaintiff's complaints of pain.   Those complaints are, after all,
subjective.  "[T]he ascertainment of the existence of an actual disability depend[s]
on determining the truth and reliability of [a claimant's] complaints of subjective
pain."  *Scharlow v. Schweiker*, 655 F.2d 645, 649 (5th Cir. 1981) (holding that the ALJ
must resolve "the crucial subsidiary fact of the truthfulness of subjective symptoms
and complaints").[3]  People with objectively identical conditions can experience
significantly different levels of pain, and pain is more readily treated in some than
in others.   "Reasonable minds may differ as to whether objective medical
impairments could reasonably be expected to produce [the claimed] pain.  This
determination is a question of fact which, like all factual findings by the
[Commissioner], is subject only to limited review in the courts . . . ."  *Hand, supra,*
at 1548-49.  It is within the ALJ's "realm of judging" to determine whether "the

_____

       [3]  Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September
30, 1981 are binding precedent in the Eleventh Circuit.  *Bonner v. Pritchard*, 661 F.2d 1206, 1207 (11th
Cir.1981) (en banc).

quantum of pain [a claimant] allege[s] [is] credible when considered in the light of other evidence." *Arnold v. Heckler*, 732 F.2d 881, 884 (11th Cir. 1984). Thus, a physician may be told by a patient that he or she is in pain, and the physician may believe it, but the ALJ is not bound by that. The evidence as a whole, including the existence of corroborating objective proof or the lack thereof, and not just a physician's belief or the plaintiff's claims, is the basis for the ALJ's credibility determination.

Here the ALJ noted that, other than mild positive findings on MRI, there was little in the medical record to support Mr. Hysmith's claims of disabling pain. As noted above, he was released from treatment by two doctors, his treatment was consistently conservative, and when examined by Dr. Jacob he had dirt and grease on his hands and around his fingernails and well as significant callouses on his palms. This is certainly circumstantial evidence that Mr. Hysmith had been doing something with his hands other than sitting and watching television. There was substantial record evidence to support the ALJ's determination, and Mr. Hysmith is not entitled to reversal on this ground.

Accordingly, it is respectfully RECOMMENDED that the Commissioner's decision be AFFIRMED, that judgment be entered in favor of the defendant, and that the clerk be directed to close the file.

At Pensacola, Florida this 10th day of August 2009.


/s/ *Miles Davis*
**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  See 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**